# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of <br> *(Briefly describe the property to be searched or identify the person by name and address)* <br><br> Titanium Black Samsung Galaxy Model: S24 Ultra <br> Seized as FP& F: 2024255200008501 Item: 004 <br> IMEI: 357463820789765 | Case No. **24-mj-8653** |

**FILED**
Aug 01 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ ClaudiaCarranza   DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the  Southern  District of  California , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone    *(specify reliable electronic means)*.

Date: 08/01/2024

*Judge's signature*

City and state:  El Centro, California    HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**  Titanium Black Samsung Galaxy Cellphone
Model: S24 Ultra
Seized as FP& F: 2024255200008501 Item: 004
IMEI: 357463820789765
Seized from Cesar Gerardo BE-Lopez
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 26, 2024, up to and including July 26, 2024, and is limited to the following:

    a.    tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

    b.    tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

    d.    tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device;

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**   Titanium Black Samsung Galaxy Cellphone
Model: S24 Ultra
Seized as FP& F: 2024255200008501 Item: 004
IMEI: 357463820789765
Seized from Cesar Gerardo BE-Lopez
**(Target Device #1)**

**A-2:**   Black Samsung Galaxy Cellphone
Model: S 10 SM-G973F
Seized as FP& F: 2024255200008501 Item: 005
IMEI: 359620082203920
Seized from Cesar Gerardo BE-Lopez
**(Target Device #2)**

**A-3:**   Black Samsung Galaxy Cellphone
Model: A14
Seized as FP& F: 2024255200008501 Item: 003
Seized from Victor COSS-Martinez
**(Target Device #3)**

**A-4:**   Red Apple iPhone
Model: SE 2nd Gen
Seized as FP& F: 2024255200008501 Item: 002
IMEI: 359844408803169
Seized from Rigo Junior SANDOVAL-Mencia
**(Target Device #4)**

as further described in Attachments A-1 to A-4, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

1

2. The requested warrant relates to the investigation and prosecution of Cesar Gerardo BE-Lopez (BE), Victor COSS-Martinez (COSS), and Rigo Junior SANDOVAL-Mencia (SANDOVAL) for transportation of illegal alien Jose IXTLAHUACA-Conde (IXTLAHUACA) (the "Material Witness") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from BE, COSS, SANDOVAL, and the Material Witness on or about July 25, 2024, incident to the arrest of BE, COSS, SANDOVAL, and the Material Witness. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

**EXPERIENCE AND TRAINING**

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent,

I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in

3

telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a.    tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

10. On July 25, 2024, at approximately 7:25 a.m., the Calexico Border Patrol Station Remote Video Surveillance System (RVSS) operator observed two individuals travelling northbound from the United States/Mexico International Boundary Fence (IBF) towards Carr Road. RVSS operators watched as the individuals swam across the All-American Canal (AAC) and continued north while concealing themselves in various locations. BPA H. Torres parked on Anderholt Road and watched as the two suspected illegal aliens walked directly past his vehicle wearing all tan clothing and were soaking wet and muddy after having just exited the AAC.

11. RVSS was able to maintain constant visual on the two individuals as they continued walking north toward Tobacco Road. While conducting surveillance, BPA Bourque observed a black Nissan Versa (Nissan) bearing California license plates travel southbound on Anderholt Road, westbound on Tobacco Road, perform a U-turn and travel back eastbound to Anderholt Road. ASU Agents identified this Nissan as being involved in a previous alien smuggling. Upon observing the Nissan, which was only occupied by the driver and no additional passengers, BPA Bourque relayed his observation to additional ASU Agents who were positioned in the area. BPA Tapia then watched as the Nissan came to a stop on the side of the road before making a U-turn and traveling away from the area towards Anderholt Road. BPA Tapia walked to the area where the two individuals were hiding and observed wet footprints for two individuals in the dirt travel from the southside of Tobacco Road and disappear.

12. ASU Agents watched as the Nissan travelled westbound on Highway 98 and Agents observed there was now an additional backseat passenger. ASU Agents kept constant visual on the Nissan while it travelled westbound and entered the Walmart parking

lot in Calexico, California. As the Nissan entered the Walmart parking lot, ASU Agents watched it park near the exit by the gas pumps. ASU Agents then watched as one rear seat passenger, later identified as Victor COSS-Martinez (COSS) exited the rear passenger seat walked to a car and hid behind it. COSS was still dressed in his wet and muddy tan clothing. At this time, a Customs and Border Protection helicopter (Troy) arrived on scene and assisted with surveillance from above. As the Nissan exited the Walmart parking lot, ASU Agents split up to continue surveillance on both the Nissan and COSS.

13. ASU Agents and Troy kept constant visual on the Nissan as it travelled towards El Centro until it arrived and entered the Super 8 Motel parking lot. ASU Agents and Troy watched as the driver, later identified as Cesar Gerardo BE-Lopez (BE) exited the Nissan and spoke to the clerk. After a brief conversation, BE travelled to two other hotels, spoke to a clerk at both motels until traveling back to the Super 8 Motel. ASU Agents and Troy watched as BE spoke to the clerk, made a payment, received a room key, walked back to the Nissan, opened the rear passenger door and ushered the back seat passenger, later identified as Jose IXTLAHUACA-Conde into room 117.

14. At this time, ASU Agents entered the parking lot and approached BE as he walked back from the room with the room key towards the Nissan. ASU Agents approached BE with Border Patrol markings and insignia fully visible and identified themselves as Border Patrol Agents. BPA Heipt questioned BE as to his citizenship. BE stated that he was a citizen of Mexico and a Legal Permanent Resident and provided his immigration document. BPA Heipt then questioned BE as to who he brought with him to the motel. BE stated that he was a taxi or Uber driver, and he gave the individual a ride to the Motel.

15. While BPA Heipt questioned BE, additional ASU Agents approached Room 117 and knocked and announced themselves as Border Patrol Agents. After knocking and announcing themselves, IXTLAHUACA opened the door. BPA J. Diaz again identified himself as a Border Patrol Agent and questioned IXTLAHUACA as to his citizenship. IXTLAHUACA admitted to being a citizen of Mexico, illegally present in the United

States. IXTLAHUACA admitted he made the illegal entry by climbing the border fence or by walking through an area other than through a designated Port of Entry. BE and IXTLAHUACA were placed under arrest. ASU Agents at the Super 8 Motel notified ASU Agents conducting surveillance on COSS that BE and IXTLAHUACA had been arrested. BE and IXTLAHUACA were transported to the Calexico Border Patrol Station for processing.

16.  ASU Agents continuing surveillance on COSS watched as he continued to hide behind cars, talk on his phone and sit under trees in the Walmart parking lot. After approximately one hour, ASU Agents watched as a taxicab showed up and an individual, later identified as Rigo Junior SANDOVAL-Mencia (SANDOVAL) exited the taxicab and approached COSS. After a brief conversation, COSS and SANDOVAL walked towards the Walmart and entered the store together. BPA A. Botello initiated surveillance on foot and followed the two into Walmart. BPA Botello watched as COSS and SANDOVAL walked throughout Walmart and COSS purchased a new shirt before walking outside into the parking lot with SANDOVAL. As the pair walked outside, COSS was observed wearing the new shirt he had just purchased.

17.  As both COSS and SANDOVAL stood outside, BPA Botello observed them wave down a taxicab. As they entered the taxicab, BPA Botello overheard SANDOVAL request a ride to "the border" (Calexico West Port of Entry). After hearing SANDOVAL request a ride to the Calexico West Port of Entry, BPA Botello relayed this information to additional ASU Agents who initiated mobile surveillance on the taxicab as it exited the Walmart parking lot. At this time, BPA C. Pluim travelled to the area in a fully marked service vehicle to assist with conducting a vehicle stop on the taxicab.

18.  As the taxicab approached Highway 98, BPA Pluim activated the emergency lights and sirens of his service vehicle. The taxicab slowed down, pulled over and came to a complete stop. BPA Botello and BPA Tapia approached the taxicab with Border Patrol markings and insignia fully visible. BPA Botello identified himself as a Border Patrol Agent and questioned SANDOVAL as to his citizenship. SANDOVAL stated that he was

a United States Citizen. BPA Tapia identified himself as a Border Patrol Agent to COSS and questioned him as to his citizenship. COSS admitted he is a citizen of Mexico, illegally present in the United States. COSS admitted he made the illegal entry by climbing the border fence or by walking through an area other than through a designated Port of Entry. COSS and SANDOVAL were placed under arrest.

19. At the Border Patrol Station, BE was advised of his Miranda rights. BE acknowledged his rights and agreed to make a statement without the presence of an attorney. BE stated he is a citizen of Mexico with a valid Permanent Resident Card. BE stated he was arrested because he gave a ride to a person without documents. BE stated he picked up two people that had dirty Clothing near 98 at a Ranch. BE admitted he was going to get paid around $138 dollars to transport one of them to the Calexico Walmart because he was the guide. BE stated he then transported the other one to an El Centro Hotel.

20. At the Border Patrol Station, SANDOVAL was advised of his Miranda rights. SANDOVAL acknowledged his rights and agreed to make a statement without the presence of an attorney. SANDOVAL stated that he is a United States Citizen. SANDOVAL admitted to previous arrests at the Port of Entry and for alien smuggling. SANDOVAL also stated to have done some jail time stemming from the aforementioned arrests. SANDOVAL stated he is currently on probation. SANDOVAL then claimed more people jumped in the taxi to include the individual he suspected of being an illegal alien.

21. At the Border Patrol Station, COSS was advised of his Miranda rights. COSS acknowledged his rights and agreed to make a statement without the presence of an attorney. COSS stated he was born in Mexicali, Baja California, Mexico. COSS stated that that he has been arrested four times and works as a foot guide. COSS stated an individual helped him and the illegal alien cross illegally into the U.S. and COSS stated he crossed canals and fields filled with water and mud. COSS stated he started working as a foot guide and has successfully smuggled seven times into the United States. COSS knew that once he crossed into the United States a black Nissan was going to pick him up with the illegal alien close to Highway 98. COSS stated he usually gets paid around $300-$400 per person.

1  COSS stated the driver of the Nissan drove him to Walmart in Calexico, California. COSS
2  stated the friend bought him a shirt and paid for the taxi.
3       22.   Material Witness IXTLAHUACA stated that he is a citizen of Mexico.
4  IXTLAHUACA had agreed to pay approximately 7,500 USD to be smuggled into the
5  United States and transported to a location in Riverside, California. IXTLAHUACA stated
6  that they were supposed to wait for a black vehicle that would pick them up.
7  IXTLAHUACA also stated that another individual who also crossed with him was guiding
8  him north. IXTLAHUACA stated that the other individual who was guiding him was in
9  communication via cell phone with the smugglers in Mexico. At that point a black vehicle
10 arrived, and they were instructed to get in. IXTLAHUACA stated that they drove to a Wal-
11 Mart where the foot-guide was dropped off. IXTLAHUACA then stated that they drove
12 further north to a hotel. Once at the hotel the driver told him to get in to shower and change.
13      23.   During a search incident to arrest of BE, COSS, SANDOVAL, and the
14 Material Witness, four cellphones were found: a Titanium Black Samsung Galaxy
15 cellphone (Target Device #1) was found on BE's person by Agent Heipt and a black
16 Samsung Galaxy cellphone (Target Device #2) was also found on BE's person. BE claimed
17 ownership of both cellphones.  A black Samsung Galaxy cellphone (Target Device #3) was
18 found on COSS' person by Agent Botello and COSS claimed ownership of this cellphone.
19 A red Apple iPhone (Target Device #4) was found on SANDOVAL's person by Agent
20 Tapia and SANDOVAL claimed ownership of this cellphone. All cellphones were seized
21 as evidence.
22      24.   I am aware that smuggling conspiracies require planning to successfully
23 evade detection by law enforcement.  In my professional training and experience, this may
24 require planning and coordination in the days and weeks prior to the event. Additionally,
25 co-conspirators are often unaware of the subject's arrest and will continue to attempt to
26 communicate with the subject after the arrest to determine their whereabouts.  Given this,
27 I respectfully request permission to search the Target Devices for data beginning on June
28

26, 2024, up to and including July 26, 2024, the day after the arrest of BE, COSS, SANDOVAL and the Material Witness.

## METHODOLOGY

25. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

26. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

27. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## CONCLUSION

28. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that BE, COSS, SANDOVAL, and the Material Witness used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by BE, COSS, SANDOVAL, the Material Witness, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 1st day of August, 2024.

_____  1:52 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

11

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:** Titanium Black Samsung Galaxy Cellphone
Model: S24 Ultra
Seized as FP& F: 2024255200008501 Item: 004
IMEI: 357463820789765
Seized from Cesar Gerardo BE-Lopez
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:** Black Samsung Galaxy Cellphone
Model: S 10 SM-G973F
Seized as FP& F: 2024255200008501 Item: 005
IMEI: 359620082203920
Seized from Cesar Gerardo BE-Lopez
**(Target Device #2)**




The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**     Black Samsung Galaxy Cellphone
Model: A14
Seized as FP& F: 2024255200008501 Item: 003
Seized from Victor COSS-Martinez
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**   Red Apple iPhone
Model: SE 2nd Gen
Seized as FP& F: 2024255200008501 Item: 002
IMEI: 359844408803169
Seized from Rigo Junior SANDOVAL-Mencia
**(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 26, 2024, up to and including July 26, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.